IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| FLOYD J. MCGRONE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:22-cv-375 (AJT/JFA) |
| ) | |
| HON. LLOYD J. AUSTIN, III, Secretary, ) | |
| United States Department of Defense, ) | |
| ) | |
| Defendant. ) | |
| ) | |

## **MEMORANDUM OPINION AND ORDER**

Plaintiff filed this action on February 23, 2021, pursuant to Title VII of the Civil Rights of 1964 and the Age Discrimination and Employment Act of 1967, alleging retaliation and discrimination during his time employed by the Department of Defense in Ramstein, Germany. *See* [Doc. No. 1] at 1. After the close of discovery, the Defendant moved for Summary Judgment on all four counts of the Complaint. [Doc. No. 41]. A hearing was held on the Motion on November 30, 2022, following which the Court stated its intention to grant the Motion.

Upon consideration of the Motion, the memoranda in support thereof and in opposition thereto, the argument of counsel at the hearing, and for the reasons set forth below, the Motion for Summary Judgment is hereby **GRANTED**.

### I. FACTUAL BACKGROUND

The Plaintiff worked for the Ramstein Gateway Reception Center (the "RGRC") in Ramstein Germany from 2014 to 2019 as a transportation assistant with responsibilities that included coordinating the travel of military personnel, civilians, and military families to and from various countries in Europe. [Doc. No. 1] at 5; [Doc. No. 42] at 4. The Plaintiff generally

alleges that he performed exemplary work in his position and that despite his performance he faced "egregious animosity, inaction and malfeasance, that detrimentally affected his employment status…" [Doc. No. 1] at 7. More specifically, Plaintiff alleges that as a result of illegal discrimination and retaliation he was either not promoted or not allowed to extend his tour as a civilian working at the Ramstein Airforce Base. [Doc. No. 42] at 4.

Plaintiff bases his claims on the following events:[1]

- In 2016, the Plaintiff filed two EEO Complaints that alleged that the Plaintiff was discriminated against based on sex, race and age because a younger white female coworker received preferential treatment. [Doc. No. 42-1]; [Doc. No. 42-3]. The Army issued Final Decisions on both Complaints.

- In early 2017, the Plaintiff went on leave for two weeks to the United States. [Doc. No. 1] at 11 ¶ 55. At this time, a supervisor position opened and was advertised. *Id*. at 11 ¶ 57. Applications for the position were closed before the Plaintiff returned to Germany. *Id*. at 11 ¶ 58. Plaintiff contends that his supervisors had advance knowledge of his departure from Germany and timed the advertisement of the supervisor position to preclude him from filing an application in retaliation for his having engaged in protected activity. [Doc. No. 46] at 25. Plaintiff also contends that this action reflects disparate treatment because a young white coworker with less experience was hired for the position. *Id*.

- In March of 2017, the Plaintiff applied for a health technician position at the Veterans Health Administration (hereinafter the "VA") in Colorado. [Doc. No. 42] at 5 ¶ 11. Plaintiff alleges that a Ms. Klein, a representative from the Civilian Personnel Advisory Center ("CPAC"), failed to timely process his application paperwork for the Colorado

---

[1] *See generally* [Doc. No. 42] at 4-12.

position, [Doc. No. 1] at 14 ¶ 72, in retaliation for Plaintiff's prior protected activity. [Doc. No. 46] at 20. In response, Defendant contends that the Plaintiff was required to take a physical examination, Ms. Klein could not schedule a physical examination for the Plaintiff. [Doc. No. 42] at 9 ¶ 34, Plaintiff failed to schedule a physical exam and he ultimately withdrew his application.

- On September 14, 2017, the Plaintiff filed an EEO complaint alleging discrimination based on retaliation when the CPAC office failed to communicate with the VA. [Doc. No. 42-5] at 7-8. The Army issued a final agency decision for this claim on December 2, 2020 finding there was no discrimination. [Doc. No. 42-7].

- On February 2, 2017, the Plaintiff received a two-year extension of his three-year overseas tour. *See* [Doc. No. 42] at 10-11 ¶ 39. On July 13, 2018, the Plaintiff submitted a request to extend his post in Germany for an additional two years beyond the five years that the Plaintiff was already set to serve. *Id*. at 10 ¶ 42. This request was ultimately denied. *Id*. The Plaintiff contends that this denial was made in retaliation for his prior protected activity and was discriminatory because a younger white coworker was granted a one-year extension of his five-year tour. [Doc. No. 1] at 15 ¶ 79. The Defendant contends that civilians are generally limited to 5 years of service in a foreign country unless there are extraordinary circumstances, that Plaintiff's request was denied on that basis, [Doc. No. 42] at 10 ¶ 38, and that there were extraordinary circumstances for the referenced one-year extension beyond five years granted to another employee. *Id*. at 11-12 ¶ 43.

- In 2019, the Plaintiff applied for a supervisory reception and assignment specialist position at RGRC, which would have been a promotion from his previous position. *Id*. at

3

20 ¶ 102. The Plaintiff was not asked to interview for the position. *Id*. at 20 ¶ 104. The Plaintiff alleges that this failure to interview and promote him demonstrates discrimination because a younger white employee with less experience at RGRC was hired for the new position. *Id*. at 20 ¶ 106.

- In May of 2019, Plaintiff attempted to file an EEO complaint alleging discrimination based on race and retaliation related to both the denied request for an extension of his overseas tour and his not being considered for the supervisory position. [Doc. No. 42-8] at 2-5, 9. On November 24, 2020, the Army issued a final decision on this EEO complaint, which found that there was no discrimination or retaliation.

- In November of 2019, Plaintiff attempted to enroll in the Priority Placement Program (the "PPP") but was denied enrollment. [Doc. No. 1] at 19 ¶ 97. The PPP is a program that aids civilian contractors who are being displaced from positions outside the United States. *See* [Doc. No. 42-8] at 53. The Plaintiff contends that the denial of PPP enrollment was pretextual, arbitrary and part of a pattern of discrimination and retaliation by Plaintiff's supervisors. [Doc. No. 1] at 19. The Defendant asserts that the reason for the denial of PPP enrollment is that the Plaintiff failed to sign up for the PPP program in the time-window required for enrollment in the program, despite multiple individuals contacting the Plaintiff and informing Plaintiff of the time frame to enroll. [Doc. No. 42] at 12 ¶¶ 49-51.

## II. LEGAL STANDARD

A party may move for summary judgment by identifying either a claim or defense, or a part of a claim or defense, on which summary judgment is sought. Federal Rule of Civil Procedure 56(a). Summary judgment will be granted "if the movant shows that there is no

genuine dispute as to any material fact." *Id*. A party opposing a motion for summary judgment must point to specific factual evidence to show that a genuine dispute of material fact exists, and that summary judgment should not be granted in the movant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 519 (4th Cir. 2003) (quoting *Anderson*, 477 U.S. at 247-248). A non-movant's conclusory assertions and denials are not sufficient to preclude an award or summary judgment for the movant. *See Tom v. Hospitality Ventures LLC*, 980 F.3d 1027, 1037 (4th Cir. 2020) (citations omitted).

### III. DISCUSSION

In his Complaint, the Plaintiff has asserted the following four claims: (1) Racial discrimination pursuant to 42 USC § 2000e *et. seq.* (Count I); (2) retaliation based on race pursuant to 42 USC § 2000e *et. seq*. (Count II); (3) age discrimination pursuant to 29 USC § 632 *et. seq.* (Count III); and (4) retaliation pursuant to 29 USC § 632 *et. seq.* (Count IV) [Doc. No. 1] at 21-25. The Complaint bases all of these claims on the following alleged "unlawful actions" (listed in chronological order):[2]

- Action 1: The 2017 failure to be promoted to supervisor position

---

[2] It is not clear from the pleadings or the briefing on the Motion whether Plaintiff's claims of discrimination and retaliation are based on discrete acts of discrimination, a concerted overall effort, or an overarching policy. Although the Complaint alleges essentially overall concerted action based on a pattern of retaliatory activity, this theory of liability is not addressed in the Opposition to the Motion for Summary Judgment and would in any event not be applicable to this case. *Cf. Holland v. Wash. Homes, Inc.*, 487 F.3d 208, 219 (4th Cir. 2007) (a continuing violation theory is based on events that "are part of a single, ongoing pattern of discrimination, i.e. when the incidents make up part of a hostile work environment claim.") Likewise, while the Complaint alleges that, upon information and belief, "Defendant Agency has a policy and practice of treating its older black African American male[s] disparately from the way it treated its younger white Caucasian male[s]." [Doc. No. 1] at 9, Plaintiff's opposition to the Motion for Summary Judgment does not offer any factual support for this allegation. Accordingly, the Court will assess Defendant's liability based on the described discrete acts.

- Action 2: The failure to be hired for the position at the Denver VA
- Action 3: The denial of his request to extend his overseas tour beyond five years
- Action 4: The 2019 failure to be promoted to a supervisory position
- Action 5: The denial of his enrollment in the PPP program

Defendant argues that the Plaintiff has (1) not properly exhausted administrative remedies for some of the claims; (2) has not proffered sufficient facts to show a prima facie case for discrimination under either the ADEA or Title VII; and (3) has not proffered sufficient facts for his claim of retaliation.

*A. The Plaintiff has not administratively exhausted claims based on three of the identified discrete acts.*

As an initial matter, Plaintiff has failed to exhaust his administrative remedies as to his claims based on Actions 1, 3, and 5.

A Plaintiff who brings a claim of discrimination or retaliation must exhaust administrative remedies before filing suit in a Federal district court. *Cavalier Tel., LLC v. Va. Elec. & Power Co.*, 303 F.3d 316, 322 (4th Cir. 2002) (citations omitted). Claims for discrimination under the ADEA and Title VII have nearly identical administrative remedies. *Miles v. Goldschmidt Chem. Corp.*, 2007 U.S. Dist. LEXIS 75063 at *7 (E.D. Va. October 9, 2007) (citing *EEOC v. Commercial Office Prod. Co.*, 486 U.S. 107, 112 (1988)). A federal employee's administrative complaint that seeks such a remedy must be filed within 45 days of the date of the adverse employment action. 29 C.F.R. § 1614.105(a)(1). After the claims in the administrative complaint have been adjudicated, a plaintiff must also timely file a civil suit in federal district court within 90 days of receiving notice of a final agency decision on the plaintiff's administrative complaint. 29 USC § 626(e); 42 USC §2000e-16(c). Once discrimination claims reach the federal district court, a plaintiff's claims are generally limited to

the claims presented in an administrative complaint. *Chacko v. Patuxent Inst.*, 429 F.3d 505, 509 (4th Cir. 2005) (citing *Alvarado v. Board of Trustees*, 848 F.2d 457, 460 (4th Cir. 1988)).

Plaintiff does not dispute that he did not raise in administrative proceedings any claims related to the 2017 failure to hire him for a supervisory position (Action 1) or the 2019 failure to enroll him in the PPP program (Action 5). *See* [Doc. No. 42] at 14-15. Defendant is therefore entitled to judgment in his favor as a matter of law as to any liability based on those two events.

The Defendant also argues that any claim regarding the failure to extend the Plaintiff's overseas tour in 2018 (Action 3) should also be dismissed for failure to bring this claim to an EEO counselor within 45 days of notice of the adverse action. [Doc. No. 42] at 15. In response, the Plaintiff argues that he was permitted to amend his initial EEO complaint, and that the agency accepted all his amended claims for investigation—which includes his claim pertaining to the extension of his overseas tour. [Doc. No. 46] at 18. However, after initially choosing to investigate the claim regarding Plaintiff's requested extension of his overseas tour, the Army EEO office subsequently dismissed the claim regarding the overseas tour extension as untimely. [Doc. No. 42-8] at 20[3].

The Plaintiff further argues based on 29 C.F.R. §1614.105(a)(2) that he should be excused from the 45-day requirement.  [Doc. No. 46] at 17. This regulation allows for the 45-day limit to be extended when "an individual shows…that he or she did not know and reasonably should not have been known that the discriminatory matter or personnel action occurred." 29 C.F.R. §1614.105(a)(2). The Plaintiff argues based on the Equal Employment Opportunity Commission's administrative ruling in *David Ball v. Anthony M. Frank, Postmaster General, United States Postal Service,* EEOC No. 05880247 (July 6, 1988), that the 45-day requirement

---

[3] "You initially contacted the US Army Garrison Rheinland-Pfalz EEO Office on April 10, 2019 and the OTEX was submitted on July 13, 2018 which is 271 calendar days; 226 calendar days beyond the established 45-calendar day limit." [Doc. No. 42-8] at 21.

was tolled until he discovered facts indicating that the adverse action was discriminatory and that he did not discover such facts until March, 2019. The Fourth Circuit has expressly rejected such a discovery rule, holding instead that the time to file a complaint seeking an administrative remedy runs from the date of the discrete act and not the date a plaintiff receives notice of "a discriminatory effect or motivation." *Hamilton v. 1st Source Bank*, 928 F.2d 86, 88-89 (4th Cir. 1990); *see also D'Antonio v. Napolitano*, 2012 U.S. Dist. LEXIS 63328 at *19 (E.D. Va. May 4, 2012) (45 days to file EEO action is counted from the date of the discriminatory action for both ADEA and Title VII claims).

Based on undisputed facts, Plaintiff did not raise his claim about the denial of his tour extension within the 45-day window required by statute and therefore has not properly brought a claim based on his denial of the overseas tour extension. Further, there is no evidence that would support a finding that the Defendant has waived an objection to the administrative exhaustion requirement for this claim.

For the above reasons, the claims regarding the 2017 supervisory position (Action 1), the extension of the overseas tour (Action 3), and the PPP program (Action 5), have not been exhausted in a prior administrative proceeding, as required; and Defendants is entitled to judgment in its favor as a matter of as to those claims based on those events.[4]

---

[4] The Plaintiff contends that, regardless of any exhaustion requirement, all claims regarding discrete acts should be considered based on the principles of estoppel, equitable tolling, and waiver. [Doc. No. 46] at 16. In that regard, Plaintiff argues that he first became aware of evidence of discrimination in March 2019, when he first learned that a coworker,[4] unlike him, had been granted an extension of the coworker's overseas tour. [Doc. No. 46] at 13-14. But the application of equitable estoppel is only proper when a plaintiff is wrongly misled or deceived by a defendant in a way that caused the plaintiff to miss a filing deadline. *English v. Pabst Brewing Co.*, 828 F.2d 1047, 1049 (4th Cir. 1987); *Doe v. Brennan*, 980 F. Supp. 2d 730, 738 (E.D. Va. 2013) ("Estoppel requires *affirmative misconduct* intended to mislead or deceive a plaintiff." (emphasis in original) (citing *Nealon v. Stone*, 958 F.2d 584 (4th Cir. 1992))). Here, there is no evidence that would support its application. Nor is there any evidence of waiver and Plaintiff's claims based on the denial of his extension request with respect to his overseas tour is barred.

*B. There is no genuine dispute of material fact with regard to claims of discrimination based on race or age.*

The Plaintiff in this case has not proffered any direct evidence of discrimination and therefore must proffer facts establishing a prima facie case of Title VII discrimination under the burden shifting framework outlined in *McDonnell Douglas Corp. v. Green*. 411 U.S. 792 (1973); *see also Hyatt*, 2000 U.S. Dist. Lexis 13645, at 15. ("If such direct evidence is lacking, a plaintiff must proceed with indirect evidence pursuant to the three-part framework…") Under this framework, a plaintiff must show (1) he was the member of a protected class; (2) he applied for the position in question; (3) he was qualified and (4) he was rejected under circumstances giving rise to an inference of unlawful discrimination. *Harris v. Rumsfeld*, 428 F. Supp. 2d 460, 466 (E.D. Va. 2006). A plaintiff may prove an ADEA claim under the same framework by demonstrating "with reasonable probability, that but for the age of the plaintiff, the employment decision adverse to the plaintiff would not have been made." *Duke v. Uniroyal, Inc.*, 928 F.2d 1413, 1417 (4th Cir. 1991). If a plaintiff can demonstrate the initial *prima facie* case of discrimination, the burden shifts to the Defendant to provide a non-discriminatory justification for why the adverse employment action (such as failure to promote or hire) was taken. *See Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 253 (1981). And once a defendant meets his burden to show a non-discriminatory justification under *McDonnell Douglas*, the plaintiff must establish that the defendant's actions were not the real reason but merely a pretext for discrimination. *Id*. at 252-53; *Okoli v. City of Baltimore*, 648 F.3d 216, 230-231 (4th Cir. 2011) "A plaintiff alleging a failure to promote can prove pretext by showing that he was better qualified, or by amassing circumstantial evidence that otherwise undermines the credibility of the employer's stated reasons." *Heiko v. Colombo Sav. Bank, F.S.B.*, 434 F.3d 249, 259 (4th Cir. 2006) (references omitted).

With respect to Plaintiff's claim based on a failure to interview him for the 2019 promotion (Action 4), the Defendant has asserted the legitimate non-discriminatory reason that the Plaintiff did not meet a high enough assessment score to qualify for an interview.[5] Plaintiff argues that regardless of his score he was qualified for the position based on his experience and track record. [Doc. No. 46] at 26. But the Plaintiff's perception of his own qualifications and performance is not relevant to whether he possessed the required qualifications for the position sought. *DeJarnette v. Corning, Inc.*, 133. F.3d 293, 299 (4th Cir. 1998) ("it is the perception of the decision maker which is relevant."); and the Plaintiff has not pointed to any facts that would allow a factfinder to conclude that he was qualified for the supervisor position based on the qualification requirements set by his employer, *i.e.* that he should have received an interview despite not having the requisite assessment score. Nor has he proffered any facts that would support a claim that the reason given for his receiving an interview was a pretext for discrimination. According, there is no genuine dispute of material fact and Defendant is entitled to judgment as a matter of law on Plaintiff's claim based on his not receiving an interview (Action 4).

As for any claim based on the remaining discrete action, failure to be hired for the Denver VA position, (Action 2), the undisputed facts show that the Plaintiff ultimately made the choice to withdraw his application, [Doc. No. 42] at 9 ¶ 30; [Doc. No. 46] at 12 ¶ 30, and therefore did not suffer any adverse employment action. *See Evans v. Davie Truckers, Inc.*, 769 F.2d 1012, 1014 (4th Cir. 1985) (a plaintiff cannot claim there was an adverse employment action when the plaintiff voluntarily quit a position). In addition to the lack of evidence demonstrating that an adverse action was taken, the Defendant has also offered the legitimate

---

[5] Plaintiff received a score of less than 100 on an application assessment evaluated by a Ms. Burgman, who represents that she was unaware of the Plaintiff's race, age, or prior protected activity at the time of the assessment. [Doc. No. 42-8] at 28.

10

non-discriminatory justification for the disputed action, supported by unrebutted evidence, that CPAC did not process the Plaintiff's employment applications because the CPAC representative does not and cannot schedule physical examinations for agencies with no organizational relationship with the Army (such as the VA), *see* [Doc. No. 42-10] at 4 ¶ 7 (Affidavit of Sigrid Klein),[6] and the Plaintiff did not schedule his own physical examination. In addition, there has been no proffered evidence to support any contention that that this reason was a pretext for discrimination.

    *C. There is no factual support to demonstrate a causal link between any of the actions and prior protected activity.*

To state a claim of retaliation under the ADEA or Title VII, a plaintiff must show that (1) he engaged in a protected activity, (2) he suffered an adverse action and (3) there is a causal connection between the activity and adverse action. *Laber v. Harvey*, 438 F.3d 404, 432 (4th Cir. 2006) (en banc); *McNairn v. Sullivan*, 929 F.2d 974, 980 (4th Cir. 1991). To establish a causal connection, a plaintiff may either demonstrate relevant facts that support the existence of that connection or a plaintiff may show that there is a minimal temporal proximity between the protected activity and the adverse action. *Smith v. CSRA*, 12 F.4th 396, 417 (4th Cir. 2021).

Relying on the Fourth Circuit's holding in *Lettieri v. Equant, Inc.*, Plaintiff argues that the Court should find, notwithstanding the lack of temporal proximity, a causal connection between the Plaintiff's filing EEO complaints and the adverse employment actions he suffered.

---

[6] Plaintiff makes repeated references to Klein's not returning his phone call or e-mail to her. But there is nothing in the record that ties these facts to any discriminatory action or motive, other than Plaintiff's own subjective beliefs. Defendant has also introduced uncontradicted evidence that Ms. Klein—who allegedly took adverse action against Plaintiff during Act 2—was not aware that the Plaintiff engaged in any protected activity. [Doc. No. 42-10] at 4. Further, for the claim that Plaintiff was not hired for the 2019 supervisor position (Act 4), Plaintiff only proffers his conclusory belief without any factual support that there is a "recurring retaliatory animus" by his supervisors.[Doc. No. 46] at 27.

478 F.3d 640. In *Lettieri*, like in this case, there was a long period of time[7] between the protected activity and the adverse employment action which the district court found could not demonstrate a causal connection. *Id*. at 650. However, in reversing the district court's grant of summary judgment, the Appellate Court found that there was a sufficient causal connection to support a finding of retaliation due to a series of intervening retaliatory events. *Id*. at 651. ("These intervening events—which occurred regularly after [plaintiff's] complaint and can reasonably be viewed as exhibiting retaliatory animus on the part of [defendant's managers]—are sufficient to show a causal link between [plaintiff's] complaint and her termination.") In contrast, the Plaintiff here has not proffered facts sufficient to show sufficient intervening retaliatory events that could prove a causal connection to substantiate a claim for retaliation.

In sum, Plaintiff has failed to administratively exhaust any claims based on three of the discrete actions (Actions 1, 3, and 5), failed to demonstrate a *prima facie* case of age discrimination based on either Action 2 or Action 4, failed to proffer any evidence that Defendant's legitimate, non-discriminatory reasons for its actions were not its real reasons—but rather a pretext for discrimination and retaliation, and failed to proffer evidence sufficient to show any causal relationship between any alleged protected activity or unlawful conduct with any adverse employment actions.

## IV. CONCLUSION

For the above reasons, there are no genuine issues of matter fact and Defendant is entitled to judgment as a matter of law on all counts. Accordingly, it is hereby

**ORDERED** that the Defendant's Motion for Summary Judgment [Doc. No. 41] be, and the same hereby is **GRANTED** on all counts of the Complaint; and this action is **DISMISSED**.

---

[7] In the present case, there is a period of roughly a year between the 2016 EEO complaints and the alleged adverse action from the CPAC with regard to the Denver VA position. There is a period of a little over a year between the 2017 EEO complaints and the alleged failure to promote in 2019.

The Clerk is directed to forward a copy of this Memorandum Opinion and Order to all counsel of record and enter judgment in favor of Defendant pursuant to Rule 58.

Alexandria, Virginia
December 21, 2022

Anthony J. Trenga
Senior U.S. District Judge

13